IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EPSON AMERICA, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 24-cv-10563-LTS |
| SHENZHEN RONGCHUANG YOUPIN ELECTRONIC COMMERCE CO., LTD d/b/a COMAOGO | ) |
| Defendant. | ) |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT
AND PERMANENT INJUNCTIVE RELIEF
(with Memorandum of Law Incorporated)**

Pursuant to Federal Rule of Civil Procedure 55(b) and the Courts Order dated April 24, 2024 (ECF 9), Plaintiff Epson America, Inc. ("Plaintiff" or "Epson") hereby moves for default judgment against Defendant Shenzhen Rongchuang Youpin Electronic Commerce Co., Ltd d/b/a Comaogo ("Defendant") due to its failure to timely respond to Epson's Complaint. By virtue of its default, Defendant has admitted the factual allegations in the Complaint and these allegations must be taken as true. *See* Fed. R. Civ. P. 8(b)(6).[1] In support of this request, Epson states as follows:

## **INTRODUCTION**

This is a false advertising and unfair competition lawsuit involving Epson's efforts to protect its brand and consumers from Defendant's illegal and nefarious activities. As explained in

---

[1] "Effect of Failing to Deny. An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided."

1

great detail within Epson's pleadings, Defendant advertises and sells its products on the Internet via its own website, www.comaogo.com, and other third-party marketplaces such as Amazon.com, BestBuy.com, and Newegg.com (hereinafter, the "Websites"). On the Websites, Defendant falsely advertises its projectors by misrepresenting and purposefully and deceptively inflating the brightness specifications of its projectors. Brightness is the top specification a consumer considers when purchasing a projector. Epson itself tested the brightness of several of Defendant's projectors, and each tested significantly below Defendant's advertised brightness value. Accordingly, this motion seeks permanent injunctive relief in the form of a default judgment enjoining Defendant's ongoing false advertising and unfair competition, as well as actual damages related to Defendant's gains, profits, and advantages that it has obtained as a result of its unlawful acts.

## STATEMENT OF FACTS

### A. Portable Consumer Projectors

While previously and traditionally associated with movie theaters, projectors have become an increasingly common video display product for consumers used in home, business, and educational settings. ECF No. 1, Complaint ¶ 8. Today, consumers use digital projectors in the same way as television or computer screens, and are able to purchase projectors in a variety of sizes ranging from the size of a cell phone to larger, permanently-mounted projectors for home theaters. *Id.* ¶¶ 9–10. Within a particular projector category, such as portable consumer projectors, the quality and corresponding price of a specific projector is largely determined by its resolution and light output. *Id.* ¶ 11. Projector light output is measured and described in lumens. *Id.* ¶ 12. The higher the lumen rating, the brighter the projector, and, all else being equal, the more it will cost. *Id.* The lumen rating is one of the most important and immediately recognizable projector

318456251.2

features for consumers, and one that necessarily impacts consumer choice. *Id.* ¶ 13.

    **B.**  **Epson's Projectors**

  Epson is a leading manufacturer in the printer, professional imaging, projector, scanner, systems devices, and factory automation categories. Compl. ¶ 5. In particular, Epson is recognized throughout the world and the United States as a leading projector manufacturer, and Epson has often been recognized in the industry through various product awards and other industry recognition. *Id.* ¶¶ 14–15. As a market leader, Epson continues to set standards for image quality, performance, and innovation with its line of multimedia projectors. *Id.* ¶ 15. Epson prides itself on achieving the highest customer satisfaction ratings, accomplished in large part by using the most precise testing equipment and procedures available. *Id.* ¶ 16.

    **C.**  **Defendant's False Advertising of its Projectors**

  Defendant is a direct competitor of Epson in the portable consumer projector market. Compl. ¶ 17. Defendant sells and offers for sale projectors to consumers throughout the United States via various online commerce sites including, but not limited to, Amazon.com, BestBuy.com, and Newegg.com. *Id.* ¶¶ 17-21. Defendant sells is projectors under various models including, but not limited to, its Mini Movie Portable projector. *Id.* ¶ 18. Defendant advertises the brightness value for the Mini Movie Portable projector to be 9500 lumens on its Amazon.com[2] product page:

---

[2] https://www.amazon.com/sp?ie=UTF8&seller=A2IFA5YE3SNR7M&asin=B0CBRCRQQP&ref_=dp_merchant_link&isAmazonFulfilled=1

318456251.2





*Id.* ¶ 19. On BestBuy.com, Defendant advertises the brightness value for the Mini Movie Portable projector to be 9500 lumens:

318456251.2



318456251.2

*Id.* ¶ 20. Defendant advertises the brightness value for the Mini Movie Portable projector to be 9500 lumens on Newegg.com:



*Id.* ¶ 21. The brightness values on each advertisement are prominently displayed in both the projectors' listing page titles as well as throughout the projectors' listing pages. *Id.* ¶ 22.

In order to gain initial traction in the United States marketplace, Defendant purposefully and deceptively inflates the brightness specification of its projectors by making these statements, recognizing the importance of brightness to a consumer. Compl. ¶¶ 23–24. Epson tested the brightness of several of Defendant's Mini Movie Portable projectors. *Id.* ¶ 25. Of Defendant's projectors tested by Epson, each projector tested significantly below its advertised brightness value. *Id.* In fact, Epson's testing showed ***a value of less than 1% of the claimed lumens*** in each of the Mini Movie Portable projectors that it tested. *Id.*

### D.     The Harm Caused by Defendant

Defendant's actions, as described in detail above, substantially harm Epson, consumers, and the consumer projector market as a whole. Compl. ¶¶ 29–30. Defendant's purposeful inflation of the brightness specification of its projectors has caused significant confusion in the marketplace.

6

318456251.2

*Id.* ¶ 26. As a result, purchasers of Defendant's projectors are likely to be, and have actually been, misled and deceived by Defendant's literally false product labeling, descriptions, and advertisements. *Id.* ¶ 28. Consumers expect the represented product specifications to be accurate for Defendant's projectors, yet consumers that purchase Defendant's projectors actually receive projectors with drastically lower performance outputs than advertised. *Id.* ¶ 28. These false and misleading misrepresentations damage Epson and the consuming public, as they are designed to entice consumers to purchase Defendant's products over Epson's products. *Id.* ¶¶ 29-32.

The natural, probable, and foreseeable result of Defendant's wrongful conduct has been to cause confusion, deception, and mistake in the consumer projector market as a whole, to deprive Epson of business and goodwill, to injure Epson's relationship with existing and prospective customers, and to divert sales of Epson projectors. Compl. ¶ 30. By means of example, after having a poor experience with Defendant's projector with an improperly inflated lumen value of "9500 lumens," the consuming public is less likely to purchase a projector with a lumen rating of 9500 lumens, as consumers will be unaware that Defendant's "9500 lumens" projector is not representative of the performance of a true 9500 lumen projector. *Id.* ¶ 31. Instead, a consumer unsatisfied with the performance of Defendant's projector will simply purchase a television rather than a different projector. This causes irreparable harm to Epson, as well as to the entire portable projector marketplace. Compl. ¶ 31.

Epson is informed and believes that Defendant's wrongful conduct has resulted in increased sales and market share of Defendant's projectors while hindering the sale and market share of Epson's projectors and damaging Epson's goodwill. *Id.* ¶ 32. Epson has sustained and will continue to sustain irreparable damages as a result of Defendant's wrongful conduct, unless enjoined. *Id.* ¶ 33.

318456251.2

    E.  **Defendant's Default**

True and accurate copies of the Complaint and Summons were served upon Defendant on March 11, 2024, as indicated by Affidavit of Service filed with the Court. *See* ECF No. 7; Nickerson Aff. ¶ 4. As such, Defendant was required to file a response to Epson's Complaint on or before April 1, 2024. *Id.* ¶ 5. To date, Defendant has not answered or otherwise moved with respect to the Complaint, and the time for Defendant to answer or otherwise move with respect to the Complaint has expired. *Id.* ¶ 6. Given Defendant's failure to appear in this case, the Clerk of the Court properly entered a Default on April 24, 2024. ECF No. 9; Nickerson Aff. ¶¶ 7, 8.

Upon information and belief, Defendant is a business entity and is not an infant or incompetent person or in the military service of the United States. Nickerson Aff. ¶ 11.

## ARGUMENT

**I.  EPSON IS ENTITLED TO A DEFAULT JUDGMENT**

Epson has met the prerequisites for a default judgment. Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment. First, the clerk must enter a default when "a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Epson has made this showing. *See* ECF No. 9, Entry of Notice of Default.

Second, upon obtaining a clerk's certificate of default, a plaintiff must next apply to the court for a default judgment where, as here, the plaintiff's claim is not for a "sum certain." *Sec. & Exch. Comm'n v. Tropikgadget FZE*, 146 F. Supp. 3d 270, 274–75 (D. Mass. 2015) (*quoting* Fed. R. Civ. P. 55(b)). On a motion for default judgment, the court may "examine a plaintiff's complaint, taking all well-pleaded factual allegations as true, to determine whether it alleges a cause of action." *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F. 3d 1, 2 (1st Cir. 2002).

In determining whether to enter a default judgment, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. *See* Fed. R. Civ. P. 8(b)(6); *Banco Bilbao Vizcaya Argentaria v. Family Rests., Inc.*, 285 F.3d 111, 114 (1st Cir. 2002); *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999) ("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability."); *Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 13 (1st Cir. 1985) ("There is no question that, default having been entered, each of [plaintiff's] allegations of fact must be taken as true and each of its . . . claims must be considered established as a matter of law.").

Here, Epson has shown that Defendant is liable for false advertising and unfair competition under the Lanham Act, as explained below.

## II.     EPSON HAS SET FORTH VALID CLAIMS

Epson's Complaint establishes a valid claims for false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125. The Lanham Act prohibits "commercial advertising or promotion" that "misrepresents the nature, characteristics, [or] qualities" of a product. 15 U.S.C. § 1125(a)(1)(B). To prevail on a claim brought under that section, a plaintiff must prove:

> 1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about [its] own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Pegasystems, Inc. v. Appian Corp.*, 424 F. Supp. 3d 214, 221–22 (D. Mass. 2019) (quoting *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310-11 (1st Cir. 2002)). A defendant can be liable under the Lanham Act both for claims that are "literally false" and those

9

that are "true... [yet] misleading."  *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 33 (1st Cir. 2000).  A literally false claim can be made "either explicitly or by necessary implication." *Id*. at 35.  A claim is "conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Id.* "Commercial claims that are implicit, attenuated, or merely suggestive usually cannot fairly be characterized as literally false," though such claims may still be misleading.  *Id.* (citation omitted).

This distinction matters because if a challenged claim is "literally false," the third element of consumer deception is presumed.  *Id.*  Consumer deception is also presumed if a statement is merely misleading, but "there is evidence that defendants intentionally deceived the consuming public." *Cashmere,* 284 F.3d at 311 n.8.  Otherwise, the plaintiff must "show how consumers have actually reacted to the challenged advertisement rather than merely demonstrating how they could have reacted."  *Clorox*, 228 F.3d at 33.

Here, the allegations of Epson's Complaint, which are now taken as true, make clear that Defendant is making literally false claims regarding its projectors. Specifically, Defendant advertises its projectors with inflated incorrect, and literally false brightness values – an attribute of particular importance to consumers in the market for projectors.  *See* Compl. ¶¶ 13, 22–23.  Epson tested the brightness of several of Defendant's projectors, and each projector tested significantly below its advertised brightness value. *Id.* ¶ 23.  Indeed, Epson's testing showed that the actual brightness value of Defendant's projectors *to be less than 1% of their advertised value*. *Id.*  As such, one can only concluded that the brightness value of the Min Portable projector received by consumers also have brightness values of less than 1% of their advertised value. Accordingly, Defendant's advertisements are literally false and the first element is easily satisfied.

318456251.2

As to the second element, Epson has established that Defendant's misrepresentation is material, in that it is likely to influence the purchasing decision of consumers. "One method of establishing materiality involves showing that the false or misleading statement relates to an 'inherent quality or characteristic' of the product." *Id.* at 311–12 (citing *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997)). The Court need not engage in any mental gymnastics or rely solely on Epson's allegations (which it may do in this default scenario) to determine that Defendant's misrepresentations were material to consumers' purchasing decisions. It is common sense that brightness is an inherent quality or characteristic of digital projectors. Furthermore, Defendant's own advertisements, which prominently display the brightness values not only in the listing page titles, but also throughout the listing pages, show that brightness is a material quality of projectors. By listing the brightness value not only in the listing page titles, but also throughout the listing pages, Defendant clearly recognizes that brightness specifications are one of the inherent qualities consumers are most likely to look at when making purchasing decisions in the projector marketplace. *See* Compl. ¶¶ 19–23. The materiality of Defendant's misrepresentations is clear, and the second element is satisfied.

Epson need not prove the third element of deception because case law makes clear that for claims that are "literally false" the third element of consumer deception is presumed. *See Pegasystems*, 424 F. Supp. at 222 ("[I]f a challenged claim is 'literally false,' the [second] element of consumer deception is presumed."); *Cashmere & Camel*, 284 F.3d at 311 ("Where the advertisement is literally false, a violation may be established without evidence of consumer deception."); *Clorox Co.*, 228 F.3d at 33 ("If the advertisement is literally false, the court may grant relief without considering evidence of consumer reaction."). Defendant's advertisements are literally false, thus liability is presumed as to the third element.

11

The fourth element, that the defendant places the false or misleading statement in interstate commerce, is satisfied. Epson sets forth in its Complaint, Defendant makes its misrepresentations on Amazon.com, Bestbuy.com and Newegg.com. *See* Compl. ¶¶ 19–21. In establishing a seller account on Amazon.com, Bestbuy.com, and Newegg.com, developing its own website to advertise its products, and selling its products throughout the United States, Defendant has misrepresented the brightness values of its projectors in interstate commerce. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194–95 (11th Cir. 2001) ("The distribution of [products] for end-users over the Internet satisfies the use in commerce jurisdictional predicate."); *Planned Parenthood Fed. Of Am., Inc. v. Bucci*, C.A. No. 97 Civ 0629, 1997 WL 133313, at * 3 (S.D.N.Y. Mar. 24, 1997) (citing *Intermatic v. Toeppen*, 947 F. Supp. 1227, 1239 (N.D. Ill. 1996) ("The nature of the Internet indicates that establishing a typical home page on the Internet, for access to all users, would satisfy the Lanham Act's 'in commerce' requirement.").

Finally, Epson has established that consumers, the entire consumer projector market, and Epson have been injured, and continue to be injured, by Defendant's lessening of goodwill associated with portable projectors and direct diversion of sales. By misrepresenting and deceptively inflating the brightness specifications of its projectors, Defendant entices consumers to purchase Defendant's products over Epson's products, resulting in lost sales and market share for Epson. This deprives Epson of business and goodwill, injures Epson's relationship with existing and prospective customers, and diverts sales of Epson projectors.

Given that "[w]hen a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability," Epson has alleged facts sufficient to establish False Advertising and Unfair Competition under 15 U.S.C. § 1125.

### III. THIS COURT SHOULD GRANT EPSON PERMANENT INJUNCTIVE RELIEF TO PREVENT FURTHER HARM

Pursuant 15 U.S.C. § 1116(a), Epson is entitled to a permanent injunction prevent further harm. Under the Lanham Act, a court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). An injunction is the "usual and standard" remedy in Lanham Act cases. *See* 5 J. Thomas McCarthy, Trademarks & Unfair Competition § 30:1 (4th ed. 2006). Courts routinely grant injunctive relief through default judgments. *See, e.g., Gucci Am. Inc. v. Tyrrell-Miller*, 678 F. Supp. 2d 117, 120 (S.D.N.Y. 2008) (ordering permanent injunction after default judgment).

To obtain a permanent injunction, in addition to succeeding on the merits, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Allstate Ins. Co. v. Fougere*, 581 F. Supp. 3d 307, 318 (D. Mass. 2022) (quoting *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006)). Epson, left without an adequate remedy at law, meets all the requirements for permanent injunctive relief.

1. <u>Epson is Likely to Succeed on the Merits of its Claim</u>

As discussed above, Epson has established that Defendant engaged in false advertising and unfair competition in violation of the Lanham Act. In deciding whether to grant injunctive relief, the likelihood of success on the merits "normally weighs heaviest on the decisional scales." *See Spruce Environmental Techs., Inc. v. Festa Radon Techs., Co.*, C.A. No. 15-11521-NMG, 2016 WL 1611433, at *1 (D. Mass. Apr. 21, 2016) (quoting *Coquico, Inc. v. Rodriguez-Miranda*, 562 F.3d 62, 66 (1st Cir. 2009). In this case, Epson has established success on the merits because, as

a matter of settled law, Defendant's default constitutes an admission of liability. *See, e.g., Franco*, 184 F.3d at 9 n.3 (1st Cir. 1999) ("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability."). Accordingly, Epson has satisfied the first, and often most heavily considered, element for permanent injunctive relief.

    2.    <u>Irreparable Injury Will Result in the Absence of an Injunction</u>

Epson has established that it has suffered—and continues to suffer—irreparable harm at the hands of Defendant. Courts routinely grant injunctive relief in false advertising cases under the Lanham Act. *See, e.g., Spruce Environmental*, 2016 WL 1611433, at *4 (granting injunctive relief and finding irreparable harm because moving party was likely to lose customers and goodwill if the opposing party continued falsely advertising its products). Because Defendant is offering for sale a product with significantly lower brightness values than advertised, not only are consumers being harmed, but so too is Epson and the entire consumer projector market. *See Polar Corp. v. CocaCola Co.*, 871 F. Supp. 1250, 1251 (D. Mass. 1994) (explaining there was at least potential for irreparable harm absent injunctive relief, particularly where parties were "engaged in an industry that relies heavily on the consumer's perception of quality"). Defendant misrepresents and deceptively inflates the brightness specifications of its projectors, and does so knowing that consumers rely heavily on brightness values in making purchasing decisions in the consumer projector market. Defendant's false statements entice consumers to purchase Defendant's products over Epson's products. Defendant's wrongful conduct deprives Epson of business and goodwill, injures Epson's relationship with existing and prospective customers, and diverts sales of Epson projectors. This kind of harm is truly irreparable and weighs in favor of this Court issuing a permanent injunction against Defendant.

318456251.2

3. <u>Epson Has No Adequate Remedy at Law</u>

Additionally, Epson has shown that there is no adequate remedy at law to compensate for this irreparable harm so long as Defendant continues to falsely advertise its projectors. The very fact that Defendant has made the strategic decision to default in this action and failed to respond or appear in any capacity, supports a presumption that it will continue its false advertising. Defendant's continuing misconduct will cause further loss to Epson's market share, goodwill and reputation, not to mention its negative effect on consumers and the projector marketplace as a whole. As such, Epson has demonstrated that there is no adequate remedy at law to compensate for its continued irreparable injury, satisfying this element of the analysis and weighing heavily in favor of injunctive relief.

4. <u>The Harm to Epson Far Outweighs the Harm Defendant Would Suffer From the Imposition of an Injunction</u>

The balance of hardships between Epson and Defendant weighs heavily, if not entirely, in Epson's favor. First, while consumers and Epson continue to suffer irreparable harm, Defendant reaps the benefits of increased sales and market share based on its false and deceptive advertisements of its projectors. Second, any harm to Defendant would be entirely self-inflicted, since it has chosen to misrepresent the brightness values of its projectors in hopes of gaining traction in the marketplace. *See Spruce Environmental*, 2016 WL 1611433, at *4. Third, permanent injunctive relief prohibiting Defendant from making literally false statements about its products does not otherwise prejudice Defendant's advertisement interests. The requested relief seeks "merely [to] prevent [Defendant] from making false statements with respect to [its projectors], a hardship that is outweighed by [Epson's]…loss of customers and goodwill if [Defendant] continues to falsely advertise." *See Spruce Environmental*, 2016 WL 1611433, at *5. Accordingly, the balance of harms weighs heavily in favor of Epson.

318456251.2

       5.      <u>An Injunction Serves the Public Interest</u>

Granting an injunction here serves the public interest by ensuring that Defendant, a bad actor in the marketplace, ceases its misconduct. It is well settled that "it is in the public interest to remove false advertising from the marketplace." *See Spruce Environmental Techs., Inc. v. Festa Radon Techs., Co.*, 2015 WL 4038802, at *5 (D. Mass. July 2, 2015). The public has an interest in ensuring that businesses provide accurate information in their advertisements and that they do not engage in false and misleading advertising. *Id.* The relief requested herein only requests prohibiting Defendant from deceiving the public in its advertisements, which will prevent confusion and any further harm to the public. This is precisely the kind of injunction that is squarely *in* the public's interest. As such, this final factor also weighs heavily in favor of this Court issuing a permanent injunction against the Defendant.

For all of these reasons, permanent injunctive relief is necessary to mitigate and prevent further irreparable harm to Epson and consumers.

### IV.    EPSON IS ENTITLED TO ACTUAL DAMAGES FOR DEFENDANT'S UNLAWFUL ACTS

Pursuant to 15 U.S.C. § 1117, Epson is entitled to recover from Defendant the gains, profits, and advantages that it has obtained as a result of its unlawful acts. A violation under section 1125(a) entitles a plaintiff to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. 15 U.S.C. § 1117(a). In assessing profits to be awarded, plaintiff need only prove defendant's total sales; it is a defendant's burden to prove all elements of cost or deduction. "This allocation of burdens arises from the language of the Lanham Act itself: 'In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.' 15 U.S.C. § 1117(a)." *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F. 3d 56, 64 (1st Cir. 2008) ("Here, Venture met its

burden by introducing tax returns showing Venture's gross sales over the relevant time period. McGills then had the burden of producing evidentiary documentation that some of those sales were unrelated to and unaided by McGills' illicit use of Venture's marks. The company produced no such evidence.").

While there is no doubt that Epson is entitled to Defendant's profits (*see* 15 U.S.C. § 1117(a)), given the default, Epson has not been able to conduct discovery to determine Defendant's sales volume. Epson should not be penalized for Defendant's failure to appear. Accordingly, Epson requests that the Court allow Epson to take limited post-judgment discovery through a subpoena to Amazon.com, BestBuy.com, and Newegg.com, to determine the scope of Defendant's unlawful sales. Until that discovery is received, Epson requests that the judgment reflect that Epson is awarded Defendant's total sales over Amazon.com, BestBuy.com, and Newegg.com as set forth in 15 U.S.C. § 1117(a).

**V.      CONCLUSION**

WHEREFORE, Epson prays for judgment in its favor and against Defendant providing the following relief:

A.   Finding that Defendant's conduct constitutes False Advertising and Unfair Competition, in violation of 15 U.S.C. § 1125(a); resulting in Defendant, its officers, agents, servants, employees, attorneys, and any other persons or entities acting in concert or participation with Defendant, including but not limited to any online platform such as Amazon.com, BestBuy.com, Newegg.com and www.comaogo.com, or any other website, website host, website, administrator, domain registrar, or internet service provider, being preliminarily and permanently enjoined from engaging in false or misleading advertising with respect to its

projector products, and/or violating Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). Moreover, Defendant, its officers, agents, servants, employees, attorneys, and any other persons or entities acting in concert or participation with Defendant, including but not limited to any online platform such as Amazon.com, BestBuy.com, Newegg.com and www.comaogo.com, or any other website, website host, website, administrator, domain registrar, or internet service provider must immediately:

  i. Remove all of Defendant's projectors from online commerce sites, such as, but not limited to, Amazon.com, BestBuy.com, Newegg.com and www.comaogo.com, as well as retail stores, until such time as Defendant can correct its false and/or misleading advertisements;

  ii. Correct any erroneous impression consumers may have derived concerning the nature, characteristics, or qualities of Defendant's projectors, including without limitation, the placement of corrective advertising and providing written notice to the public and its prior customers;

B. Awarding Epson Defendant's profits from Amazon.com, BestBuy.com, and Newegg.com that it obtained as a result of its unlawful acts; and

C. Any other relief this Court deems just and proper.

A proposed order is submitted herewith for the Court's consideration and in accordance with its standing order on motions for default judgment. Plaintiff is available for oral argument should it aid the Court in its determination of this motion.

*[Signature page to follow]*

318456251.2

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Plaintiff<br>Epson America, Inc.,<br>by its attorney, |
|  | */s/ Morgan T. Nickerson* |
|  | Morgan T. Nickerson (BBO# 667290)<br>morgan.nickerson@klgates.com<br>**K&L GATES LLP**<br>One Congress Street, Suite 2900<br>Boston, MA 02114<br>(617) 261-3100 |
| Dated: May 21, 2024 | (617) 261-3175 |

## CERTIFICATE OF SERVICE

I, Morgan T. Nickerson, hereby certify that on May 21, 2024, I caused to be served a copy of the foregoing document via Amazon.com's electronic mail service and / or email, as permitted by the Court's Order granting Plaintiff's Motion for Alternative Service.

*/s/ Morgan T. Nickerson*
Morgan T. Nickerson

318456251.2